# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JUAN ANTONIO SAUCEDA CASTANEDA,    )
                                           )
             Petitioner,              )
                                             )
v.                                             )      Case No. CIV-26-00195-JD
                                             )
MARKWAYNE MULLIN,[1] et al.,         )
                                             )
            Respondents.           )

## ORDER

Before the Court is Juan Antonio Sauceda Castaneda's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. [Doc. No. 1]. The Government has responded in opposition. [Doc. No. 8]. Upon consideration, the Court denies the Petition.

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico who voluntarily departed the United States in 2004 before re-entering in 2005. [Doc. No. 1 ¶ 52]. Petitioner states that he has resided in the United States continuously since then. *Id.* He alleges that he underwent a dual-organ transplant approximately three years ago and that his survival depends on a strict regimen of immunosuppressant medications and ongoing monitoring by transplant specialists. *Id.* ¶ 55.

On October 29, 2025, Petitioner was stopped in Norman, Oklahoma, by several masked individuals who identified themselves as officers of Immigration and Customs

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Markwayne Mullin as Secretary of Homeland Security and Todd Blanche as Acting Attorney General for Kristi Noem and Pamela Bondi, respectively.

Enforcement. *Id.* ¶ 46. After inspecting his driver's license and asking him to produce proof of lawful permanent residency—which he did not possess—the officers took him into custody and later placed him in removal proceedings. *Id.* On February 4, 2026, Petitioner appeared before an Immigration Judge in Cushing, Oklahoma, for a custody redetermination hearing. [Doc. No. 1-1 at 2–5].[2] The Immigration Judge denied bond for lack of jurisdiction, relying on the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which the Immigration Judge construed as classifying Petitioner as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). [Doc. No. 1 ¶¶ 47, 57]. In the alternative, the Immigration Judge set a monetary bond of $25,000. *Id.* ¶ 57. A merits hearing on Petitioner's application for cancellation of removal under 8 U.S.C. § 1229b(b)(1) was scheduled for March 26, 2026. *Id.* ¶ 54.[3]

## II.    LEGAL STANDARDS

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004); *see also Soberanes v.*

---

[2] In this Order, the Court uses page numbering from the CM/ECF stamp at the top of the district court docket.

[3] A review of the Executive Office for Immigration Review's Automated Case Information portal indicates this hearing has been rescheduled for June 29, 2026. *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/ (last visited May 8, 2026).

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

### III.   ANALYSIS

**A.   The Petition's Fourth Amendment allegations do not sound in habeas.**

Counts One and Two both invoke the Fourth Amendment. Count One alleges Petitioner's initial encounter with immigration officers occurred without reasonable suspicion or probable cause. [Doc. No. 1 ¶¶ 59–61]. Count Two alleges that the stop was based on Petitioner's race or apparent ethnicity, in reliance on the Supreme Court's holding that "[r]ace or apparent ethnicity, standing alone, cannot form the basis for reasonable suspicion." *Id.* ¶¶ 62–63 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 886–87 (1975)). The Government argues that release from custody is an inappropriate remedy, even if a Fourth Amendment violation were assumed. [Doc. No. 8 at 32–33].

The Court need not decide whether the October 29, 2025, stop and arrest were supported by reasonable suspicion and probable cause, or whether they were based on race or apparent ethnicity. The Tenth Circuit's holding in *Luevano v. Holder* forecloses release as the appropriate remedy, even in the context of a petition for review of the Board of Immigration Appeals' decision where the petitioner claimed his detention and questioning violated his constitutional rights and he requested dismissal of the proceedings against him. 660 F.3d 1207, 1212 (10th Cir. 2011). "Had [Petitioner] shown [a Fourth Amendment] violation, he would be entitled to suppression of the evidence, . . . not . . . dismissal of the proceedings." *Id.* at 1213. Nothing in *Luevano* suggests the kind

of Fourth Amendment violation makes a difference: a race-based theory channels into the same suppression remedy as a probable-cause theory. The Tenth Circuit's ruling in *Min-Shey Hung v. United States* reinforces the point: despite initial defect, once valid removal proceedings have begun, those proceedings "must be allowed to proceed without the intervention of proceedings in the district court challenging [the legality of] the arrest." 617 F.2d 201, 202 (10th Cir. 1980). Petitioner's removal proceedings have begun and are scheduled for a merits hearing on his application for cancellation of removal. [Doc. No. 1 ¶¶ 47, 54, 57]. The Court thus denies the Petition as to Counts One and Two.

> **B.     The Petition does not state a basis for habeas relief under the Fifth or Eighth Amendments.**

Count Three likewise does not warrant habeas relief. Count Three combines three theories: (1) that Petitioner's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates the Fifth Amendment's Due Process Clause; (2) that the $25,000 bond set by the Immigration Judge in the alternative is excessive in violation of the Eighth Amendment; and (3) that the Government has been deliberately indifferent to his serious transplant-related medical needs. [Doc. No. 1 ¶¶ 64–73].

The Fifth Amendment reaches Petitioner: "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Yet, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a

meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). So where Congress has by statute

prescribed a detention framework for a class of noncitizens, procedural due process is

satisfied so long as the framework's prescribed procedures are being provided. *Dep't of*

*Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).

The Eighth Amendment's Excessive Bail Clause, in turn, "has not prevented

Congress from defining the classes of cases in which bail shall be allowed in this

country" and does not "require that bail be allowed" in civil immigration detention.

*Carlson v. Landon*, 342 U.S. 524, 545–46 (1952). *Carlson*'s rationale that "[d]etention is

necessarily a part of this deportation procedure," *id.* at 538, remains good law. *See*

*Demore*, 538 U.S. at 524 (quoting *Carlson*, 342 U.S. at 538). And as to any theory within

Count Three that addresses the adequacy of conditions within custody rather than the

legality of custody itself, § 2241(c)(3) limits the writ to persons "in custody in violation

of the Constitution or laws or treaties of the United States."

Petitioner's Fifth and Eighth Amendment theories do not survive the governing

law. Starting with the Fifth Amendment, the operative question is whether the process he

is receiving satisfies the Due Process Clause. *Demore* answers that question: "detention

during deportation proceedings" is "a constitutionally valid aspect of the deportation

process." 538 U.S. at 523.

The Petition's own allegations supply the answer as a matter of this record.

Petitioner appeared before an Immigration Judge on February 4, 2026, for a custody

redetermination hearing. [Doc. No. 1 ¶ 57]. Petitioner claims the Immigration Judge

found that Petitioner has no criminal record, poses no risk to national security, and is not a flight risk, *id.*, but the order itself states no such findings, [Doc. No. 1-1 at 2–5]; [Doc. No. 8-3 at 1–2]. Instead, the Immigration Judge simply ruled that he lacked jurisdiction, and set an alternative monetary bond of $25,000, should the jurisdictional ruling later be set aside on appeal. *Id.* A merits hearing on Petitioner's application for cancellation of removal under 8 U.S.C. § 1229b(b)(1) was scheduled for March 26, 2026. [Doc. No. 1 ¶ 54]. The Petition does not allege that Petitioner was denied the process § 1225(b)(2)(A) prescribes. It affirms that the process was and is being afforded, with an outcome he disputes on statutory grounds. That statutory dispute is the subject of Count Four and is resolved below, confirming that Petitioner is properly detained under that statute. *See also Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *12 (W.D. Tenn. Feb. 13, 2026) ("Because there is nothing in the record to suggest that [§ 1225(b)(2)(A) process] is not being afforded, Petitioner's due process claim necessarily fails."). Within the Fifth Amendment aspect of Count Three, the Petition's own allegations establish that the Fifth Amendment's procedural requirement of an opportunity to be heard, *Mathews*, 424 U.S. at 333, is being met. On these alleged facts, the Fifth Amendment theory fails.

The excessive bail theory fares no better. Petitioner's argument that the $25,000 alternative bond is "untethered to [his] financial circumstances" and operates as the "functional equivalent of a 'no-bond' order," [Doc. No. 1 ¶ 58], is about the size of a bond the Eighth Amendment does not require to be set at all. The Excessive Bail Clause supplies no independent entitlement to release.

The medical-indifference theory turns on a threshold question about the writ itself. Habeas corpus under 28 U.S.C. § 2241 tests the fact or duration of custody, and its operative remedy is release from unlawful custody. Petitioner alleges that his post-transplant medical condition is serious and that the Government's failure to ensure his access to transplant specialists "constitutes 'deliberate indifference' to a serious medical need." [Doc. No. 1 ¶ 71].[4] The Court accepts for present purposes that the medical need is serious. *Id.* ¶ 55.[5] But these allegations describe a challenge to the conditions of Petitioner's confinement rather than to the legality of his custody. The *DeShaney* principle that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," 489 U.S. 189, 199–200 (1989), is a substantive due process principle whose customary vehicle is an action for injunctive or compensatory relief addressed to the deprivation alleged, not a habeas order of release from all immigration custody. Even if the Petition established deliberate indifference on the merits, release from custody would not flow from the violation alleged. The Court does not reach the merits of the deliberate-indifference theory as it simply is not cognizable on § 2241 review.

Accordingly, the Court denies the Petition as to Count Three.

---

[4] The Petition does not allege that Petitioner lacks access to his immunosuppressant medications.

[5] To be sure, this fact pattern weighs on one's conscience. The Court takes no solace in the asserted facts of this case.

## C.    Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A).

Finally, Petitioner raises a statutory claim in Count 4 that he should be detained under § 1226, not § 1225(b)(2)(A). [Doc. No. 1 ¶¶ 74–79]. However, § 1225(b)(2)(A) provides a valid basis for Petitioner's detention.

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) defines "applicant for admission" to include "[a]n alien present in the United States who has not been admitted," and it contains no temporal or geographic limitation on that status. In two other orders, this Court has analyzed at length precisely why § 1225(b)(2)(A)'s mandatory detention provision governs an interior-apprehended alien who is present in the United States without having been admitted. *Montoya v. Holt*, No. CIV-25-01413-JD, 2025 WL 3733302, at *2 (W.D. Okla. Dec. 26, 2025) ("The statute does not create a third 'non-seeking applicant' category, and the 'applicant for admission' category explicitly includes both arriving and present unadmitted aliens."); *Cano v. Holt*, No. CIV-25-01228-JD, 2026 WL 736461, at *1 (W.D. Okla. Mar. 16, 2026). While courts around the country continue to refine and improve the precision of the reasoning in this area of law, the Court incorporates its prior orders by reference.

The Fifth and Eighth Circuits have adopted the same reading. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). These decisions converge on a careful textual reading of the statute: while Congress has

8

implied some exceptions, the general rule is that an alien who is an "applicant for admission" within the meaning of § 1225(a)(1) is "seeking admission" within the meaning of § 1225(b)(2)(A), regardless of length of presence in the interior or distance between place of apprehension and the border. *Montoya*, 2025 WL 3733302, at *8–9 ("The alien is 'seeking admission' in the same way the alien is 'an applicant for admission'—by congressional decree."); *Buenrostro-Mendez*, 166 F.4th at 502 ("[A]n applicant for admission to the United States is 'seeking admission' to the same, regardless whether the person actively engages in further affirmative acts to gain admission."); *see also id.* at 503 (§ 1225(a)(3)'s "or otherwise" phrasing "suggests that 'applicants for admission' are a subset of those 'seeking admission.'").

Granted, the Second, Seventh, and Eleventh Circuits recently released opinions siding in part with Petitioner's view. *See Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, --- F.4th ----, 2026 WL 1223250 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden*, ---- F.4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026). For the reasons examined in-depth in this Court's above-referenced orders—and in the absence of Tenth Circuit precedent—the Court finds the reasoning of the Fifth and Eighth Circuits significantly more persuasive and textually coherent.

As just one example of why the Court does not find the Second, Seventh, and Eleventh Circuits' reasoning persuasive: the Seventh Circuit's recent opinion asserted that 8 U.S.C. § 1225(a)(3)'s use of the word "otherwise" does not indicate that "applicants for admission" are a subset of aliens "seeking admission." *Castanon-Nava*, 2026 WL

9

1223250, at *16. The panel analogized § 1225(a)(3)'s inspection requirement to a provision stating that "[a]ll students who are football players or otherwise seeking to play football should attend the meeting." *Id.* But as this Court explained in *Montoya*:

> [That] reasoning fails because no law *deems* someone a "[football player]." An individual may choose whether to be a "[football player]" and whether to be "[seeking to play football]" at a given time. . . . Unlike the voluntary state of being a "[football player,]" [§ 1225(a)(1)] "deem[s]" an "alien present in the United States who has not been admitted" an "applicant for admission." 8 U.S.C. § 1225(a)(1). That means § 1225(a)(3)'s inspection requirement for "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission" does not contemplate a voluntary action.

2025 WL 3733302, at *9.

While the Seventh Circuit's analogy asserts categorical disjunction between a "football player" and one who *seeks* to "play football" via an alternate definition of "otherwise," no such disjunction emerges from any natural reading of § 1225(a)(3)'s treatment of "aliens . . . seeking admission" and "applicants for admission." The Seventh Circuit's example instead reinforces the *inverse* point: One who is (legally) deemed a football player (legally) seeks to play football. That is how legal fictions work. *See Hernandez Alvarez*, 2026 WL 1243395, at *25 (Lagoa, J., dissenting) ("When a statute deems 'A' to be 'B,' it places A in the legal posture of B as a matter of law, with the consequences that follow. Otherwise, 'there [is no] need to create a special legal fiction' in the first place." (alteration in original) (quoting *Sturgeon v. Frost*, 587 U.S. 28, 51 (2019))). Congress, through § 1225(a)(1)'s "deem[ing]" provision, construes present unadmitted aliens as—in the eyes of the law—seeking lawful admission. And of course Congress sees them that way. The alternative would be for Congress to create a *legal*

10

class of aliens who seek *illegal* status (and rewarding them for it). The words of § 1225 do not birth that paradox.

Accordingly, Petitioner is properly classified as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) on the Petition's own allegations. The Court denies the Petition as to Count Four.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1].[6] Accordingly, Petitioner's Emergency Motion for Expedited Review and Temporary Restraining Order [Doc. No. 10] is DENIED AS MOOT. A separate judgment will follow.

IT IS SO ORDERED this 8th day of May 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[6] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).